UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JEANETTE M. HENNEMANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:23 CV 203 RWS |
| ) | |
| LELAND DUDEK[1], ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

Plaintiff Jeanette M. Hennmann brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. For the reasons discussed below, the Commissioner's decision will be affirmed.

## Background

Hennemann protectively filed a Title II application for disability insurance benefits on October 11, 2016, alleging that she became disabled on June 27, 2016. Tr. 321–23. Hennemann alleged that her disability was due to degenerative disc disease with herniations, canal and foraminal stenosis, and radiculopathy;

---

[1] Leland Dudek became the Commissioner of Social Security on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for Kilolo Kijakazi as the defendant in this suit.

fibromyalgia, upper extremity nerve, tendon, and ligament conditions; COPD; epicondylitis; and mental impairments, including bipolar disorder, major depressive disorder, and anxiety.  Tr. 376.

Hennemann's application was denied at the initial claims level.  Tr. 223.  Hennemann then filed a request for a hearing before an administrative law judge ("ALJ"), Tr. 229, which was held on July 2, 2018.  Tr. 124–76.  On December 5, 2018, the ALJ issued an unfavorable decision finding that Hennemann had the severe impairments of degenerative joint disease of the right shoulder, degenerative disc disease with prior anterior discectomy and fusion at C5–6, chronic obstructive pulmonary disease, and fibromyalgia, but that she did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 195–209.  As a result, the ALJ concluded that Hennemann was not disabled within the meaning of the Social Security Act at any time from the alleged onset date though the date of decision.  Tr. 209.

On January 13, 2020, the Appeals Council remanded her claim for further evaluation, including a supplemental hearing.  Tr. 217–21.  On June 29, 2020, the ALJ issued a second unfavorable opinion finding that Hennemann had the severe impairments of cervical degenerative changes, lumbar degenerative changes, COPD, fibromyalgia syndrome, osteoarthritis of the hands, right shoulder degenerative

2

changes, and small nerve fiber neuropathy, but that she did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 11–22.  As a result, the ALJ concluded that Hennemann was not disabled within the meaning of the Social Security Act at any time from the alleged onset date though the date of decision.  Tr. 22.

On November 20, 2020, the Appeals Council denied review of the second unfavorable decision, and Hennemann appealed to the United States District Court. Tr. 1–5.  While Hennemann's appeal was pending in district court, she filed a new application alleging disability beginning June 30, 2020.  Tr. 2069.  This application was granted.  Tr. 2069.  On September 7, 2022, the district court remanded Hennemann's initial application for further proceedings and new hearing to determine whether Hennemann was disabled during the period before June 30, 2020. Tr. 2057–66.

After a supplemental hearing, the ALJ issued a third unfavorable decision on September 11, 2023.  Tr. 1958–70.  The ALJ found that Hennemann had the severe impairments of cervical degenerative disc disease, lumbar degenerative disc disease, osteoarthritis of the hands, right shoulder degenerative joint disease, chronic obstructive pulmonary disease, fibromyalgia syndrome, and small nerve fiber neuropathy, but that she did not have an impairment or combination of impairments

that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 1961–63. As a result, the ALJ concluded that Hennemann was not disabled within the meaning of the Social Security Act from June 27, 2016 through June 29, 2020. Tr. 1970. The ALJ's decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

Hennemann filed this action on November 13, 2023, seeking judicial review of the Commissioner's final decision. Hennemanns argues that the Commissioner's decision should be reversed because the ALJ failed to properly evaluate Step 2 of the sequential evaluation and failed to properly evaluate opinion evidence.

## Legal Standard

To be eligible for disability benefits under the Social Security Act, a claimant must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a "medically determinable physical or mental impairment" that can be expected to result in death or which has lasted or can be expected to last for at least twelve continuous months. 42 U.S.C. § 423(d)(1)(A). A claimant will be declared disabled only if her impairment or combination of impairments is of such severity that she is unable to engage in her previous work and—considering her age, education, and work experience—she is unable to engage in any other kind of substantial gainful work in the national economy. 42 U.S.C. § 423(d)(2)(A).

4

In determining whether a claimant is disabled, the Commissioner engages in a five-step evaluation process: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work; and (5) whether the claimant has the RFC to perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520. The burden of proof rests with a claimant through the first four steps but shifts to the Commissioner at step five. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009).

When reviewing a denial of disability benefits, my role is limited to determining whether the Commissioner's decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *Id.* Substantial evidence refers to less than a preponderance but enough for a reasonable person to find it adequate to support the Commissioner's decision. *Id.* I must affirm the Commissioner's decision if, "after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse

5

the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## **ALJ Decision**

The ALJ denied Hennemann disability benefits after finding that she was not disabled within the meaning of the Social Security Act at any time from the date of her alleged onset of disability of June 27, 2016 through June 29, 2020, the date Henneman was previously found to be disabled. Tr. 1970. At step one, the ALJ found that Hennemann had not engaged in substantial gainful activity since June 27, 2016. Tr. 1960. At step two, the ALJ found that Hennemann had the following severe impairments: cervical degenerative disc disease, lumbar degenerative disc disease, osteoarthritis of the hands, right shoulder degenerative joint disease, chronic obstructive pulmonary disease, fibromyalgia syndrome, and small nerve fiber neuropathy. Tr. 1961–62. The ALJ also found the following non-severe impairments: major depressive disorder, bipolar disorder, and generalized anxiety disorder. *Id.* At step three, the ALJ found that Hennemann did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 1962–63. At step four, the ALJ found that Hennemann had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), with several limitations. Tr. 1963–69. Based on RFC, the ALJ found that Hennemann could

perform past relevant work as a legal secretary. Tr. 1969–70. Because Hennemann was capable of her past relevant work, the ALJ concluded that she was not under a disability at any point during the relevant period. Tr. 1970.

### Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Hennemann's recitation of facts, ECF No. 16, to the extent they are admitted by the Commissioner, ECF No. 17-1. Additional facts will be discussed as necessary to address the parties' arguments.

### Discussion

Hennemann argues that the Commissioner's decision should be reversed because (A) the ALJ did not properly evaluate Hennemann's mental impairments during Step 2 of the sequential evaluation; and (B) the ALJ did not properly evaluate the medical opinion evidence when making the RFC determination.

**A. The ALJ properly evaluated Hennemann's mental impairments.**

At Step 2, the ALJ determines whether the claimant has a medically determinable impairment or combination of impairments that is "severe" and significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "not severe" if an individual can perform basic work activities. *See* 20 C.F.R. 404.1522. To perform basic work activities, an individual must have the

7

mental abilities to understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting.  *Lynch v. Astrue*, 874 F. Supp. 2d 810, 821 (E.D. Mo. 2012); 20 C.F.R. § 404.1522(b).

In this case, the ALJ evaluated Hennemann's impairments under the four broad areas of mental functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself.  Tr. 1961–62.

In the area of understanding, remembering or applying information, the ALJ found no limitation.  Tr. 1961.  The ALJ noted that Hennemann did not need reminders to tend to her personal care, that she could follow instructions, that she could recall background information, that she exhibited good recall, and that her comprehension was intact.  *Id.*

In the area of interacting with others, the ALJ found only a mild limitation. Hennemann reported problems interacting with others and depression, but she was able to visit her mother and attend regular appointments, she could go out alone, she could shop in stores twice a week, she presented as pleasant and cooperative, and she was able to interact appropriately with her providers.  *Id.*

In the area of concentrating, persisting or maintaining pace, the ALJ found no limitation.  *Id.*  Hennemann reported problems paying attention and not finishing

8

what she starts, but she was able to drive, use a computer, watch television, and use Facebook. *Id.*

In the area of adapting or managing oneself, the ALJ found no limitation. Hennnemann reported problems tending to her personal care, but the ALJ found those problems were due to her physical impairments. Id. The ALJ noted that Hennemann could prepare meals, perform household chores, drive, and shop for groceries. *Id.*

The ALJ further noted that although Hennemann complained of depression and anxiety, there was little evidence of treatment for a mental impairment. *See Page v. Astrue*, 484 F.3d 1040, 1044 (8th Cir. 2007) (citation omitted) (noting that "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem").

As demonstrated by the above discussion, the ALJ's decision is supported by substantial evidence. Although Hennemann argues that the ALJ ignored evidence supporting a finding that she suffered from a severe mental impairment, the ALJ need not discuss every piece of evidence in the record. *See Chaney v. Colvin*, 812 F.3d 672, 678 (8th Cir. 2016) (citation omitted) (stating that "an ALJ's failure to cite specific evidence does not indicate that it was not considered"); *see also Dols v. Saul*, 931 F.3d 741, 746 (8th Cir. 2019) (citation omitted) (stating that it "is not the role of this court to reweigh the evidence presented to the ALJ or to try the case de

9

novo"). As a result, the ALJ did not err in evaluating Hennemann's mental impairments.

**B. The ALJ properly evaluated the medical opinion evidence.**

A claimant's RFC is the most the claimant can do despite their limitations, and an ALJ must assess it based on all relevant evidence in the claimant's case record. 20 C.F.R. § 404.1545(a)(1). Relevant evidence includes "'medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013)). Because a claimant's RFC is a medical question, an ALJ's RFC determination "'must be supported by some medical evidence of the claimant's ability to function in the workplace.'" *Id.* (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)).

In this case, the ALJ found that Hennemann had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) but with several limitations. Tr. 1963–69. The ALJ assessed the following limitations:

> [Hennemann] is able to occasionally climb ramps, stairs, ladders, ropes and scaffolds. She is able to occasionally stoop, kneel, crouch and crawl. She is able to frequently handle, finger and feel with her bilateral hands. She is able to occasionally reach overhead with the bilateral upper extremities. She must avoid more than occasional work-related exposure to extreme cold, such as experienced while working in a commercial freezer; extreme heat, such as experienced while working in close proximity to a lumber kiln and pulmonary irritants, such fumes odors, dusts, gases and poor ventilation.

10

Tr. 1963.  Hennemann argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ gave little weight to the opinions of Jeffrey Draves, M.D., and Laurence Kinsella, M.D., Hennemann's two treating physicians.

I find that the ALJ properly evaluated the medical opinion evidence.  In this case, the ALJ reviewed and discussed the opinions of Dr. Draves and Dr. Kinsella.  The ALJ determined that each physicians opinion was entitled to little weight because they were not supported by examination results and appeared to rely on Hennemann's subjective complaints.  Tr. 1967; *see Halverson v. Astrue*, 600 F.3d 922, 931–32 (8th Cir. 2010) (stating an ALJ may not discount a claimant's subjective complaints "solely because they are unsupported by objective medical evidence" but may consider "the absence of objective medical evidence to support the complaints").

For example, examinations by Dr. Draves revealed only mildly diminished strength and range of motion in Hennemann's right shoulder, but good strength and range of motion in her other extremities, as well as a normal gait.  Tr. 1967.  Likewise, Dr. Kinsella's examinations showed no deficits in strength, range of motion, or ability to ambulate, *id.*, and he advised Hennemann "to exercise vigorously on a daily basis." Tr. 1969.

In determining Hennemann's RFC, the ALJ related Hennemann's work limitations to the medical evidence and her reported symptoms.  Tr. 1969.  Noting

11

that Hennemann could prepare meals, perform household chores, drive, and shop for groceries, the ALJ found that Hennemann could perform work at the sedentary exertional level with additional postural, manipulative and environmental regulations. *Id.*

In light of these considerations and supporting facts, I find that the ALJ did not improperly evaluate the medical opinion evidence. The ALJ explicitly found that the medical opinion evidence was based on subjective complaints and not entirely consistent with the medical and other evidence in the record, he identified good reasons for discounting the complaints, and his determination is supported by substantial evidence in the record as a whole. I will therefore defer to the ALJ's determination. *See Renstrom*, 680 F.3d at 1067 ("Because the ALJ gave good reasons for discounting [claimant's] credibility, we defer to the ALJ's credibility findings."); *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) ("We will not substitute our opinion for that of the ALJ, who is in a better position to assess credibility.").

## Conclusion

While Hennemann may believe that the evidence in her case record should have been assessed differently, it is not my role to reweigh evidence considered by an ALJ. *See Hensley*, 829 F.3d at 934. The ALJ's decision demonstrates that he evaluated all the medical and other evidence in Hennemann's case record and

12

adequately explained his reasons for the weight given to the evidence.  Because the ALJ's decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner will be **AFFIRMED**, and the complaint of Plaintiff Jeanette M. Hennemann will be **DISMISSED** with prejudice.

A separate Judgment in accordance with this Memorandum and Order will be entered on this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 24th day of March 2025.